**EDITH STILLINGS HAVILL,** a widow, and **EDITH STILLINGS HAVILL,** as Executrix, v. **WESLEY HOUSER,** et al.

27 So. (2nd) 115
July 19, 1946

June Term, 1946
Division A

*Jordan Johnson* and *C. D. Blackwell,* for appellant.

*Wesley Houser, Manley P. Caldwell, Bert Winters, W. J. Lake, William H. Cook* and *Loren D. Simon,* for appellees.

BUFORD, J.:

In 1940 William G. Havill of Palm Beach County, Florida, owned one-half interest in certain notes and mortgage given to secure the sum on which there was a balance unpaid of some $30,000. At that time Havill was indebted to numerous people and corporations and apparently did not have cash with which to pay his outstanding obligations. Having reached an agreement with his creditors, he executed a certain agreement and conveyance whereby he assigned to Wesley Houser his one-half interest in the notes and mortgage, in trust, however, such trust being expressed in the instrument as follows:

"And it is hereby agreed and declared that the said Trustee shall stand possessed of all right, title and interest in said security owned by said Debtor, hereinbefore assigned to said Trustee, at all times and in such manner as he, said Trustee, shall think fit to call in, collect, compel the payment of and receive such part or parts of the said security and to sell and

convert into money said Debtor's interest in said security and shall stand possessed of the net proceeds of sale of said Debtor's interest of said security which shall come into said Trustee's hands under or by virtue of the trust or powers herein contained;

"VI. Upon trust in the first place, to pay and retain thereof, all costs, charges and expenses of or incidental to the negotiation, preparation and execution of these presents, and of or to the carrying out of the same into effect;

"VII. And in the next place, to pay, divide and distribute the residue of said moneys received by said Trustee that is or may be due said Debtor pertaining to his interest in said security ratably unto and among the said Creditors, as shown by said Schedule A, in discharge of said obligations due said Creditors by said Debtor and such payments are to be made ratably whenever said Trustee has collected in behalf of said Debtor from said security the sum of $500 or more; that after said Trustee has collected sufficient sums of money due said Debtor from said security and has paid all of said Creditors the amounts shown in Schedule A opposite the name of each of said Creditors plus 4 per cent interest on said amounts from date of this Trustee agreement on such balance of principal remaining from time to time unpaid said Trustee is to pay and does hereby agree to pay and deliver unto said Debtor any surplus funds due said Debtor from his interest in said security that have been collected by said Trustee and at such time as such events happen then this Trust Agreement is to immediately become null and void, anything to the contrary notwithstanding;

"VIII. Provided always, and it is hereby agreed and declared by and between said Debtor and any and all of said Creditors that it shall be lawful and said Trustee is hereby given full power and right to bring any suit or suits in any court or courts of competent jurisdiction for the purpose of collecting any and all sums due and payable said Debtor under said security providing each sum or sums become in default in accordance with the terms, provisions and agreements contained in said note hereinbefore described and in said mort-

gage deed hereinbefore described and in said Extension Agreement hereinbefore described;

"IX. AND THIS INDENTURE FURTHER WITNESS-ETH, that in the further pursuance of this Agreement, and in consideration of the premises, the said Creditors respectfully hereby release the said Debtor from any and all claims, rights of action, liens and legal remedy which they or any of them may have had or now have against said Debtor during the life of this Trust Agreement;

"X. And it is also declared, understood and agreed by and between the parties hereto that the right, title and interest of all Creditors in and to this Trust Agreement are negotiable and assignable by each of said Creditors, insofar as their respective interest in said Trust Agreement is shown; provided, however, that should any or all of said Creditors sell, assign or use their interest in said Trust Agreement as security in any way the said Trustee, his successor or assigns shall immeriately be given written notice of the same by said credi·tor or creditors;"

The notes and mortgage above referred to were made by one Howard C. Brokaw to William G. Havill on March 3rd, 1925, and were in the sum of $63,333.33. On May 15th 1936 William G. Havill assigned an undivided one-half interest in the notes and mortgage to May F. Havill, who was at the time the wife of William G. Havill. She died testate in 1936, leaving a Last Will and Testament and, among other things, bequeathed and devised her undivided one-half interest in the notes and mortgage to Reba P. Houser and Wesley Houser, then husband and wife, in trust for the benefit of the children of Reba Houser, with the residue of the corpus not disbursed for the benefit of said children to Reba Houser individually.

Thereafter William G. Havill married Edith Stillings and thereafter he died.

On the 11th day of February, 1944, Howard C. Brokaw filed his bill of interpleader in the circuit court of Palm Beach County, Florida. The bill alleged that the plaintiff had executed mortgage to Havill, now deceased, and that approximately $28,000.00 was still due by the plaintiff thereon. It alleged the assignment from Havill to May F. Havill and to

Wesley Houser as hereinbefore outlined. It alleged that William G. Havill died on March 6th, 1943; that Edith Stillings Havill is his widow and Executrix under his will; it alleged that the widow and Executrix and Wesley Hauser as Trustee and Wesley Houser as Executor under the will of May F. Havill, deceased, each claimed to be entitled to receive balance due under the mortgage. The plaintiff being in doubt as to the proper person to whom he should pay the balance due on the mortgage debt, tendered the same with interest in the court and prayed that the court release him from further obligation under the mortgage and require Wesley Houser individually as Trustee and as surviving Executor under the will of May F. Havill and Edith Stillings Havill individually and as Executrix of the estate of William G. Havill to submit issues to the court for the determination of the rights of the parties claiming the fund.

The parties answered the bill. The rights of the parties depends entirely upon the construction to be given the assignment made on the 27th day of December, 1940, between William G. Havill and Wesley Houser as Trustee. The court below, on testimony taken before, and report of, Master, approved the Master's Report and entered a decree holding, among other things, as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED That the trust agreement introduced in evidence in this cause dated December 27, 1940, by and between William G. Havill and Wesley Houser together with the assignment mortgage from William G. Havill to Wesley Houser as trustee constitute a valid trust agreement and that the rights of said trustee above mentioned and of the creditors listed in Trustee's exhibit No. 3 heretofore filed in evidence in this cause in and to the funds now in the registry of this court heretofore paid by Howard C. Brokaw are superior in dignity to the right or rights of the defendant, Edith Stillings Havill, individually and as Executrix under the Last Will and Testament of William G. Havill, deceased, to said funds, and

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that the Clerk of this Court be and he is hereby ordered and directed to pay within twenty days after date to

Wesley Houser as trustee under the trust indenture heretofore mentioned the funds now in the registry of this court heretofore paid by Howard C. Brokaw in this cause less his fees for the disbursement of said funds, and . . . "

There is no material difference between the appellant and appellee as to legal principles involved. Their difference lies in that the appellant construes the agreement to be a trust agreement for the benefit of creditors and is void under the provisions of Chapt. No. 727, Statutes of 1941, same FSA., or is a power of attorney and, therefore, ceased to have any force and effect when the principal died. There is a paragraph in the instrument appointing Houser attorney in fact for Havill, but that appointment was so vague and indefinite as to carry with it no power and, therefore, must be considered as surplusage.

The appellee contends that this agreement was an assignment of certain property to a trustee to secure certain debts and obligations due by the assignor to certain named individuals and corporations and that it was, therefore, a mortgage given to secure the debts.

Our construction of the agreement of the 27th of December, 1940, between William G. Havill and Wesley Houser as Trustee is that that instrument on its face constituted an assignment to Houser as Trustee a certain chose in action to secure the payment of certain stated sums owed by the Trustor to certain named individuals and corporations with the provision that any surplus left after the payment of those named debts to those named creditors should be accounted for and paid by the Trustee to the Trustor.

The instrument was so conditioned that the creditors did not take the entire property pro rata but each creditor became vested with a participation in the property to the extent of the amount of the debt due him which was to be paid by the Trustee pro rata as and when cash was realized from the security after the payment of the cost incident to the collection. It was provided that when the Trustee had collected the proceeds from the interest (being a one-half interest) in the mortgage assigned to him he should first pay the costs incident to such collection and then pay to each of the creditors

the amount of his debt and then pay over the remainder to the Trustor. It was further provided that each debtor took and accepted the assignment to the Trustee in full settlement of his debt and took with it the right to sell and assign his interest so acquired therein.

At the time the agreement was executed the balance due on the mortgage was $30,000.00; the one-half interest assigned to the Trustee was $15,000.00; the aggregate amount of the indebtedness owed to creditors participating as cestuis que trustent was $11,277.90. So there was the sum of $3,722.20 less costs incident to the performance of the trust, to be paid over to the Trustor, upon which amount none of the named creditors had any claim. There was no showing that Havill was insolvent, nor is there any showing that Havill was indebted to any other creditors than those named in the list attached to and made a part of the agreement. There was no showing that any creditor was preferred over another. Chapter 727, Florida Statutes, 1941 (same FSA) was not violated by this transaction.

Our conclusion is that if there is any ambiguity in the written instrument the conclusion as to the construction to be placed upon it, as above stated, is amply supported by the oral evidence taken and submitted.

Having reached the conclusion that the trust agreement was executed for the purpose of securing the payment of the debt of the Trustor and was not such assignment for the benefit of creditors as is controlled by Chapter 727 Fla. Statutes, 1941 (same FSA), it follows that the instrument comes within the purview of Section 697.01 Fla. Statutes, 1941 (same FSA) and was valid for the purposes for which it was executed and delivered.

No reversible error being made to appear, the decree appealed from is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.